UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**RONNIE CLARK**                                                                                                **PLAINTIFF**

**v.**                                                                        **CIVIL ACTION NO. 5:23-CV-00144-JHM**

**LEONI MEDINA,** *et al.*                                                                                       **DEFENDANTS**

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are cross-motions for summary judgment filed by Defendants Leoni Parrott (f/k/a Medina), Patricia Allen, Willard O'Bryan, Bradley Barthuly, and Lauren Massey (collectively, Defendants) and Plaintiff Ronnie Clark.  (DNs 43, 57).

**I. BACKGROUND**

This is a *pro se* prisoner 42 U.S.C. § 1983 civil rights action in which Plaintiff asserts First and Eighth Amendment constitutional violations by Defendants while he was incarcerated at Kentucky State Penitentiary (KSP).

Plaintiff's complaint alleges that, in November 2022, while in 3 Cell House of the Restrictive Housing Unit (RHU) at KSP, he was attacked by another inmate who was known as a violent offender to KSP staff and other inmates.  (DN 7, PageID.107-08).  Plaintiff contends that Defendants Parrott, O'Bryan, and Allen failed to take necessary security precautions and allowed the attacker to leave the shower area unescorted and unmonitored, which resulted in Plaintiff being assaulted with a homemade knife.  (*Id.*, PageID.109-16).  Plaintiff also alleges that Defendant Barthuly failed to stop the attack.  (*Id.*, PageID.116-18).

Plaintiff alleges that he had multiple bleeding head and torso wounds from the attack and that he did not receive sufficient medical care after the attack from these Defendants.  (*Id.*, PageID.119-22).  He states that his head and torso wounds were only glued shut and that he "wasn't

even taken to the hospital for an x-ray, nor cat scan." (*Id*., PageID.122). Plaintiff asserts that he suffered severe pain from his injuries and continues to suffer from pain, migraine headaches, nausea, vomiting, and posttraumatic stress disorder (PTSD). (*Id*., PageID.119-22, 124). Plaintiff contends that these actions by Defendants reflect deliberate indifference to both his safety and serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment. (*Id.*, PageID.122-23).

Plaintiff further represents that in January 2023, Defendant Massey moved the attacker to an adjoining wing of KSP, despite being aware of the previous attack and being aware of the potential contact between the two inmates considering the housing configuration. After his complaints to Defendants regarding the cell assignments, he was placed in administrative segregation. Plaintiff contends that this conduct reflects retaliation from Defendants for exercising his rights through the grievance process. (*Id*., PageID.122-23).

Upon initial review of the complaint pursuant to 28 U.S.C. §1915A, the Court permitted Plaintiff's Eighth Amendment claims for deliberate indifference to safety and to a serious medical need to proceed against Defendants Parrott, Allen, O'Bryan, and Barthuly, and his First Amendment retaliation claim to proceed against all Defendants. (DN 12).

Discovery has concluded, and Defendants have filed a motion for summary judgment seeking dismissal of the First and Eighth Amendment claims against them on the grounds that Plaintiff did not exhaust his administrative remedies and that his First and Eighth Amendment claims fail as a matter of law. (DN 43). In support of their motion, Defendants submit the following exhibits: Incident Report dated November 3, 2022; four security surveillance videos from 3 Cell House (conventionally filed); Plaintiff's pertinent medical records from KSP; Plaintiff's grievance documents and printout of Kentucky Corrections Policies and Procedures

(CPP) 14.6 (Inmate Grievance Procedure); sworn affidavits of non-parties Scott Jordan, KSP Warden, and Jacob Bruce, Unit Administrator of the RHU; sworn affidavits of Defendants Parrott, Allen, O'Bryan, Barthuly, and Massey; Administrative Control and Detention Documents; and Offender Separation Alerts. (DNs 43-2 through 43-18).

In lieu of a response, Plaintiff has filed a cross-motion for summary judgment asserting that he has produced evidence sufficient to defeat Defendants' motion for summary judgment and requesting that the Court "rule in [his] favor or move [forward] to trial." (DN 57, PageID.855-59). Attached to his motion are the following supporting exhibits: Plaintiff's grievance documents; written correspondence between Plaintiff and KSP/Kentucky Department of Corrections (KDOC) officials; open records requests; Incident Report dated November 3, 2022, with summaries and related documents; photographs pertaining to the incident; Plaintiff's medical records; Defendants' answers to interrogatories; excerpt of CPP 10.2 (Special Management Inmates); and printout of bed assignments for Plaintiff and his attacker. (DN 57-2, PageID.873-909; DN 57-3, PageID.925 through DN 57-6, PageID.1094; DN 57-6, PageID.1116-1117).

Defendants have filed a response to Plaintiff's submission, which incorporates by reference their summary judgment memorandum and supporting attachments. (DN 58).

Fully briefed, the matter is ripe for disposition. For the following reasons, Defendants' motion for summary judgment (DN 43) will be **GRANTED**, and Plaintiff's cross-motion for summary judgment (DN 57) will be **DENIED.**

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis

for its motion and identifying the portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

#### A.

The following facts are undisputed, except where otherwise noted.

#### 1.

On November 3, 2022, Defendant Parrott was conducting showers on 12 Left Walk in 3 Cell House of the RHU. (DN 43-2, PageID.607). The 3 Cell House is equipped with a one-man shower. The doors to the showers are manually operated, so when an inmate enters the shower, an officer manually secures the door behind him, and afterward unlocks the door to allow the inmate out to return to his cell. An officer in a "control cage" remotely operates an adjacent "walk

gate" through which officers enter the walk from the shower area. (DNs 43-10, 43-12, 43-13, 43-14).

At approximately 11:54 p.m., Defendant Parrott unlocked the shower door to release inmate Jesse Bowles to return to his cell. She then walked through the open walk gate, which was operated by Defendant Allen. As the walk gate was closing behind Defendant Parrott, Bowles ran through the walk gate, pushed Parrott aside, and continued running downstairs to 14 Right Walk with Parrott in pursuit. Bowles located Plaintiff, who was cleaning up water from an earlier flood on 14 Right Walk, and attacked him, stabbing him in the head and torso with a homemade knife. (DN 43-2; DNs 43-3 to 43-6 [conventionally filed]).

Defendant Barthuly responded from an adjoining walk approximately ten seconds after the assault began, ordering the inmates to separate. Ten to fifteen seconds later, Defendant O'Bryan responded, deploying a taser dart at Bowles. Plaintiff was separated from Bowles and in "prone compliance" position. (DN 43-2, PageID.607; DNs 43-3 to 43-6). Additional officers arrived approximately one minute later, at which point Bowles was secured in mechanical wrist restraints. The weapon was recovered and secured by a responding officer. (*Id.*).

At approximately 12:00 a.m., Defendant Allen entered 14 Right Walk. One minute later, medical staff arrived to assess Plaintiff's head wound. He was then brought to the 3 Cell House medical room for treatment. Defendant O'Bryan remained in the medical room while Plaintiff's wounds were glued shut. Defendant Allen then took photographs of the incident location (14 Right Walk), Bowles, and Plaintiff's wounds. (*Id.*).

At approximately 12:45 a.m., Plaintiff was permitted to shower. Meanwhile, Bowles was relocated to a new cell (3-11R-11), as he and Plaintiff were previously housed on the same Walk. Plaintiff was then secured into cell 3-12L-11.

5

The weapon recovered from Bowles was approximately 7 and 3/4 inches in length and was made from metal that had been folded and sharpened into a point at one end, with the other end wrapped in a cloth to act as a handle. The weapon was photographed and turned into the Internal Affairs evidence room. (*Id.*).

### 2.

A KSP Health Services Encounter dated November 4, 2022 at 1:19 a.m., reads as follows:

> [M]edical emergency called to 3 cellhouse. On arrival, patient laying face down on floor on 14 right. Patient [alert and oriented], Patient bleeding from top of head. Bleeding controlled and taken to medical room. Vitals WNL. Superficial wounds on top of head, right arm, left shoulder, and right torso. All wounds cleaned with water and peroxide. Wound on top of head is glued and steri stripped. All bleeding controlled. Patient denies any other injuries.

(DN 43-7, PageID.657).

Later that morning, another medical provider reviewed the photographs of Plaintiff's wounds and, based on staff reports of a metal weapon being used in the altercation, ordered a tetanus injection. (*Id.*, PageID.659-60). On the same date, Plaintiff was escorted to medical for further assessment. (*Id.*, PageID.663). He was noted to ambulate without difficulty, was alert and oriented, pleasant mood, had no cough or distress with respirations even and unlabored. Plaintiff "denied needs," but complained of pain. His scalp was cleansed and patted dry, with some dried blood noted. Plaintiff was provided, upon his request, ibuprofen and antibiotic ointment. (*Id.*, PageID.664).

Plaintiff disputes the severity of his wounds sustained in the attack. He provides photographs of his injuries (DN 57-3, PageID.930-932), which resemble those submitted by Defendants (DN 43-2, PageID.617-639), despite his assertion that the Defendants' photographs "minimize his actual injuries." (DN 57, PageID.856). Plaintiff submits additional KSP medical

records (requests and encounter notes) evidencing diagnoses of migraine headaches and PTSD, which Defendants do not dispute. (DN 57-3, PageID.933-968).

A Health Services Encounter dated March 22, 2023, reveals that Plaintiff had previously "verbalized [suicidal ideation] to security staff," and was seen by a mental health provider for observation. (DN 43-7, PageID.667). Plaintiff indicated that he had been placed "on watch" because his "RHU time was starting to mess with him," and expressed stress and anxiety about an upcoming parole review and facility transfer. (*Id*.). Psychological Associate David Kesler noted that Plaintiff reported that he was "not suicidal and he is not experiencing thoughts of [self-injurious behavior] at this time," and was removed from watch. (*Id*.). Plaintiff's mental status examination was normal and within normal limits, presenting with neutral mood and calm, cooperative, and stable. (*Id*., PageID.668-70).

Plaintiff was transferred from KSP to Eastern Kentucky Correctional Complex on March 31, 2023. (DN 43-10).

**3.**

Grievance No. 22-11-100-G was signed by Plaintiff on November 4, 2022 and marked received by KSP on November 7, 2022. Therein, he stated that he was attacked by another inmate with a knife and requested that "appropriate action take place" in accordance with "policy and procedure." (DN 43-8, PageID.676). He attached a separate sheet of paper detailing the assault incident on November 3, 2022, and asserting that several officers, including Defendants O'Bryan, Barthuly, and Parrott, failed to follow protocol to ensure his safety, resulting in his injuries. (*Id*., PageID.677). Specifically, he stated that the inmate who attacked him was not shackled, cuffed, nor restrained, and that "crash gates" were left open "due to negligence and understaffing." (*Id*.).

7

Grievance No. 22-11-100-G was rejected on November 9, 2022, because Plaintiff needed "to clarify [the] action requested," to specify the appropriate action, policy, and procedure. Defendant Massey, who was the Grievance Coordinator at the time, wrote, "An example of a clarified action requested would be: For an investigation into this situation to occur." (*Id.*, PageID.674). The rejection notice indicated that Plaintiff "may resubmit the grievance within 5 days to the Grievance Coordinator once it is corrected on a new form within the guidelines of CPP 14.6." (*Id.*). The record does not contain a resubmitted grievance by Plaintiff.

Plaintiff wrote to Defendant Massey on January 30, 2023, referencing Grievance No. 22-11-100-G and stating that this grievance was "resubmitted on your request to clarify my action requested. I sent you the resubmission around 11-14-22 . . . . Since my resubmission . . . I've written you at least (4) letters and spoken to you in person 4 or more times in reference to this grievance specifically, with no correspondence from you . . . ." (DN 57-2, PageID.879). Plaintiff stated that he had not received an informal resolution in over three months, and, upon transferring to a new facility, would be appointing an inmate representative to pursue exhaustion of administrative remedies on his behalf. (*Id.*).

A letter from Plaintiff to the KDOC Ombudsman dated February 23, 2023, explained that he had filed a grievance on November 4, 2022, and resubmitted the grievance per Defendant Massey's instructions on November 14, 2022. Yet he had not received an informal resolution in three and-a-half months, despite writing to Massey over four times. He recounted that Grievance No. 22-11-100-G pertained to him being stabbed by another inmate in the RHU on November 3, 2022, due to the "subjective recklessness on (4) officers parts." (DN 57-2, PageID.896).

In a March 9, 2023 letter addressed to Defendant Massey and copied to the new Grievance Coordinator, Robin McCallister, Plaintiff complained that he did not receive an informal resolution

8

on Grievance No. 22-11-100-G within ten days pursuant to the jail's Inmate Grievance Procedure, and that nearly four months had passed since its filing.[1] He requested that his grievance "be waived from informal resolution to a grievance committee hearing," and, if no response was received, he wished to escalate his grievance to the Warden for review. (DN 57-2, PageID.882-86).

Next, Plaintiff addressed a letter to Warden Scott Jordan on March 27, 2023, in which he wrote:

> I'm writing you in regards to a grievance I originally filed on 11-4-22. It was in reference to me being stabbed by another inmate in 3-cell house. Due to the deliberate indifference on (4) or your officers parts. I was asked to resubmit it by then-grievance coordinator Lauren Massey and ask for a more appropriate action requested. In which I did and re-wrote and resubmitted it on 11-14-22 grievance #22-11-100-G. I've wrote you twice already about this grievance and it not being processed properly!

The letter goes on to state that it had been "almost 5 months on this grievance without as much as an informal resolution," and that Plaintiff had attempted writing to both Defendant Massey and her successor, Robin McCallister, for resolution. He requested that the Warden review his grievance within 15 days. (*Id.*, PageID.888-89).

A Request to Inspect Public Records dated April 14, 2023, shows that Plaintiff requested "a copy of my grievances I filed . . . on 11-4-22, then resubmitted to grievance coordinator Lauren Massey on 11-14-22 its pertaining to me being stabbed by an inmate in 3-cellhouse on 11-3-22." (DN 57-2, PageID.903). That request was denied, stating: "Upon review of all grievances sent to the grievance coordinator's office in Nov. 2022. There were no grievances from you found to exist. A public agency cannot afford a requestor access to a record which doesn't exist." (*Id.*).

---

[1] It is unclear if Plaintiff refers to his initial grievance from November 4, 2022, or the alleged resubmitted grievance from November 14, 2022.

9

A subsequent Request to Inspect Public Records dated September 14, 2023, was denied because Eastern Kentucky Correction Complex was not the custodian of the records Plaintiff sought. (DN 57-2, PageID.905-06). On September 18, 2023, Plaintiff redirected his record request to KSP. That request was denied by Courtney Martin, Open Records Coordinator, on September 29, 2023:

> As I stated on the open records request that I sent out to you on 1 14 23 when you asked for this information before. Grievance Coordinator Robin McCallister did not find any responsive records of this grievance. A public agency cannot afford a requestor access . . . . to a record which doesn't exist, or they do not possess. I have provided a copy of the open records response for your review . . . .

(*Id.*, PageID.907-08).

On August 23, 2023, Plaintiff, through an inmate representative, wrote to KDOC Commissioner Cookie Crews, explaining that Plaintiff had never received an informal resolution to Grievance No. 22-11-100-G filed November 7, 2022, and requested that the matter be investigated. (DN 57-2, PageID.899).

**B.**

**1.**

Defendants first seek dismissal of all claims against them on the basis that Plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). (DN 43-1, PageID.591-93).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court, interpreting § 1997e, has expressly stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be

10

brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Failure to exhaust administrative remedies under the PLRA is an affirmative defense for which defendants bear the burden of proof. *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012). Accordingly, summary judgment may be granted "'only if defendants establish the absence of a "'genuine dispute as to any material fact'" regarding non-exhaustion.'" *Id.* at 456 (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)). Because defendants also bear the burden of persuasion for this issue at trial, their "initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Id.* at 455–56 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). The burden of a defendant asserting the affirmative defense of exhaustion is satisfied where the defendants produce an administrative policy that governs the filing of grievances and show that the plaintiff failed to fully exhaust his administrative remedies pursuant to the policy. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

To meet the exhaustion requirement, an inmate must "properly exhaust" his remedies, which requires strict compliance with the grievance process provided by the prison. *Woodford*, 548 U.S. at 93-94. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. Prisoners must "complete the administrative review process in accordance with the applicable procedural rules[.]" *Woodford*, 548 U.S. at 88. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

The record reflects that Plaintiff filed Grievance No. 22-11-100-G, addressing the November 3, 2022, attack by Bowles and requesting that "appropriate action take place." (DN 43-8). In the attachment to this grievance, Plaintiff states that Bowles was not restrained, despite being a "segregation inmate." (*Id.*).[2] He goes on to state that crash gates were "left open due to negligence and understaffing" through which Bowles ran toward Plaintiff and stabbed him multiple times. (*Id.*). Plaintiff stated that Defendants O'Bryan, Barthuly, and Parrott were "present" for the attack and were assigned to Bowles' walk (3 Cell House 12 Left). (*Id.*). He wrote that Defendant Allen took photographs of Plaintiff's injuries for evidence. (*Id.*). Defendant Massey rejected Grievance No. 22-11-100-G, instructing Plaintiff to "clarify your action requested," and to resubmit his grievance within five days. (*Id.*).

At this point, the parties' factual recitations diverge. Defendants assert that Plaintiff filed only Grievance No. 22-11-100-G and did not resubmit his grievance as instructed by the rejection notice, thereby failing to exhaust his administrative remedies in accordance with KSP's established grievance procedure. (DN 43-1, PageID.592-93). CPP 14.6(II)(J) sets forth the four-step Inmate Grievance Process, which consists of: (1) a written grievance and informal resolution; (2) Grievance Committee hearing; (3) appeal to Warden; and (4) appeal to Commissioner. (DN 43-9).

---

[2] The Court notes that Plaintiff was housed in the RHU due to his own documented history of violence against staff. (DN 43-16).

12

Plaintiff, in contrast, asserts that he resubmitted his grievance on November 14, 2022, but did not receive a response. (DN 57-1, PageID.864-71). While he does not produce a copy of his resubmitted grievance, he submits multiple letters and records requests which reference the resubmitted grievance. (DN 57-2, PageID.874-909). The correspondence, directed to Defendant Massey, Grievance Coordinator McCallister, Warden Jordan, KDOC Commissioner Cookie Crews, and the KDOC Ombudsman, suggest that Plaintiff never received a response to his resubmitted grievance. (*Id.*). His records requests sought copies of the November 14, 2022, resubmitted grievance, but no records were found and his requests were denied. (DN 57-2, PageID.903-908). In this regard, Plaintiff asserts that he was denied the administrative review process by KSP officials because his resubmitted grievance of November 14, 2022, went unanswered, despite his exhaustion attempts. (DN 57-1, PageID.864-70).

Viewing the facts and drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff's claims for Eighth Amendment medical indifference and First Amendment retaliation are unexhausted. Grievance No. 22-11-100-G addressed only his failure-to-protect claim. There is no record of any grievance pertaining to the alleged medical indifference or retaliation by Defendants. As observed by the Supreme Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors." 548 U.S. at 94. To be sufficient, a grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003), *abrogated on other grounds by Jones*, 549 U.S. at 205. Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

On the undisputed record, nothing in Plaintiff's grievance history or in his communications to officials raises concerns regarding inadequate medical treatment or retaliatory acts. Plaintiff does not assert, much less provide evidence, that he attempted to grieve these claims or make affirmative efforts to utilize the grievance procedures to address them. Plaintiff's failure to utilize the Inmate Grievance Process, therefore, renders his medical indifference and retaliation claims unexhausted. Accordingly, summary judgment in favor of Defendants is appropriate because no reasonable jury could find that Plaintiff exhausted his administrative remedies as to these claims. *See, e.g.*, *Freeman v. Troutt*, No. 3:12-CV-0266, 2014 WL 793590, at *5 (M.D. Tenn. Feb. 26, 2014), *report and recommendation adopted*, No. 3:12-CV-00266, 2014 WL 1491085 (M.D. Tenn. Apr. 15, 2014) (granting summary judgment on exhaustion grounds where the plaintiff did not file any grievances regarding the allegations in his complaint); *see generally*, *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 224–25 (6th Cir. 2011).

A closer question is whether Plaintiff's failure-to-protect claim is unexhausted. CPP 14.6 (II)(J), produced by Defendants, details the Inmate Grievance Process in effect at the time Plaintiff filed Grievance No. 22-11-100-G. The four-step procedure begins with the filing of an initial grievance/informal resolution and concludes with an appeal to the Commissioner. Additionally, CPP 14.6 (II)(J)(5)(a) provides a mechanism that permits an inmate to appeal an initial grievance when the prison's deadline to respond to it passed. (DN 43-9, PageID.692) ("If a time limit for a response from Corrections staff is not met at any level, the grievant has the option of agreeing to a requested extension of the time limit or having the grievance forwarded without action to the next level of review."). The next level of review after the informal resolution stage is the Grievance Committee Hearing, which requires "a written request to the Grievance

Coordinator that the Grievance Committee hold a hearing concerning his grievance." (DN 43-9, PageID.688).

A letter from Plaintiff to the KDOC Ombudsman, dated February 23, 2023, explained that Plaintiff had not received an informal resolution in three and a half months, nor a "request for more time per policy 14.6" from Massey, despite writing to her on four occasions regarding "this specific grievance [Grievance No. 22-11-100-G]." (*Id*., PageID.896).[3]

By letter dated March 9, 2023,[4] addressed to Defendant Massey and copied to Grievance Coordinator McCallister, Plaintiff referenced the "Time Limits" clause of CPP 14.6(II)(J)(5) by requesting that Grievance No. 22-11-100-G "be waived from informal resolution to a grievance committee hearing." (DN 57-2, PageID.882). He further stated that if no response was provided, he wished to advance his grievance to the Warden per the procedure set forth in CPP 14.6. (*Id*.) Plaintiff indicated the same in a March 27, 2023, letter to Warden Jordan. (*Id*., PageID.888-89).

Defendants are correct that, generally, correspondence to various prison and DOC officials outside of the grievance process is insufficient to exhaust administrative remedies. (DN 58, PageID.1122). *See Shephard v. Wilkinson,* 27 F. App'x 526, 527 (6th Cir. 2001) ("While Shephard asserts that he has raised his complaints in numerous letters to prison and public officials, a prisoner must utilize the formal grievance process provided by the state; he cannot comply with the requirements of § 1997e(a) by informally presenting his claims."). And even if an inmate has evidence to show that administrative remedies were unavailable, he must still make "affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered

---

[3] Plaintiff does not produce the referenced letters to Massey in his exhibits.
[4] Plaintiff does not explain why he did not make this request until nearly four months after he filed his resubmitted grievance. Plaintiff's attached correspondence begins on January 30, 2023.

15

these remedies unavailable." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) (quoting *Napier*, 636 F.3d at 223).

Reading Plaintiff's submissions indulgently, however, there exists a factual dispute as to whether Plaintiff exhausted administrative remedies concerning his failure-to-protect claim. Here, Plaintiff has submitted evidence to suggest that he unsuccessfully attempted to invoke the "Time Limits" mechanism set forth in CPP 14.6(II)(J)(5) to escalate his grievance(s) after he did not receive an informal resolution. As such, Defendants have not met their burden to show that Plaintiff's claim against them is unexhausted as a matter of law. *See Bowling v. Wellpath Inc.*, No. 2:22-CV-11897, 2023 WL 6546665, at *8 (E.D. Mich. June 21, 2023), *report and recommendation adopted*, No. 22-11897, 2023 WL 6126247 (E.D. Mich. Sept. 19, 2023) ("A grievance that is filed but never considered or responded to, despite numerous attempts, cannot be said to be available.") (citing *Ross*, 578 U.S. at 636).

However, as discussed below, Plaintiff's failure-to-protect claim fails on the merits, and Defendants are nonetheless entitled to summary judgment.

### 2.

The Court turns to Defendants' argument that Plaintiff's failure-to-protect claim against Defendants Parrott, Allen, O'Bryan, and Barthuly fails as a matter of law because Plaintiff has not established either component of the Eighth Amendment deliberate indifference standard. (DN 43-1, PageID.593-98).

Under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Westmoreland v. Butler Cnty.*, 29 F.4th 721, 726 (6th Cir. 2022) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). This does not mean that "every injury suffered by one prisoner at the hands of another . . . translates into constitutional

16

liability for prison officials responsible for the victim's safety." *Id.* (quoting *Farmer*, 511 U.S. at 834). "A prison official violates an inmate's rights" due to such violence "only if the official is 'deliberately indifferent to inmate health or safety.'" *Id.* (cleaned up) (quoting *Farmer*, 511 U.S. at 834). An Eighth Amendment deliberate indifference claim has an objective and a subjective component. *Id.* (citing *Richmond v. Huq*, 885 F.3d 928, 937–38 (6th Cir. 2018)). As explained by the Sixth Circuit in *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021):

> For a failure-to-protect claim to lie against a prison official, the plaintiff must show that: (1) "objectively," he was "incarcerated under conditions posing a substantial risk of serious harm," . . . and (2) the official acted with "deliberate indifference" to inmate safety, meaning the official was "subjectively aware of the risk" and "fail[ed] to take reasonable measures to abate it."

*Id.* (quoting *Farmer*, 511 U.S. at 829, 234, 847). The objective component "requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Applying this framework to the undisputed facts of record, Plaintiff fails to demonstrate that he was incarcerated under conditions posing a substantial risk of serious harm on November 3, 2022.

First, Plaintiff establishes only a generalized risk of harm to RHU inmates. *See Davis v. Chorak*, No. 22-1839, 2023 WL 2487339, at *3 (6th Cir. Mar. 14, 2023) (merely alleging that another inmate had a violent history is not enough to establish a substantial risk of harm, there must be some indication of a personal risk to the plaintiff). He does not allege that he had a history of animosity with Bowles or had any notice that the attack by Bowles would take place. *See Davis v. Duncan*, No. 3:22 CV 614, 2025 WL 1736696, at *8 (N.D. Ohio June 23, 2025) (the "mere presence" of violent inmate in prison was insufficient to present a condition posing a substantial risk of serious harm where there was no history of animosity between inmates

and no previous interactions with one another ); *Holder v. Saunders*, No. CV 7:13-38-KKC, 2019 WL 4927097, at \*8 (E.D. Ky. Oct. 7, 2019) (finding objective prong was not met when the plaintiff was attacked by his schizophrenic cellmate who had a history of violence because the cellmate had not specifically threatened the plaintiff, there were no reports that the cellmate was acting strangely, and he "was interacting just fine with the other inmates, including [the plaintiff], prior to the attack").

Nor does Plaintiff assert that Bowles had previously threatened him or that he informed KSP officials that Bowles posed a danger to him. *See Walker v. Carbor*, No. 24-cv-11093, 2024 WL 2788398, at \*3 (E.D. Mich. May 30, 2024) (dismissing plaintiff's failure-to-protect claim because plaintiff did "not allege that these inmates had previously assaulted or threatened him," or that "he informed prison authorities that these inmates posed a danger to him."); *see also Davis v. Chorak*, 624 F. Supp. 3d 870, 880-83 (W.D. Mich. 2022), *aff'd*, No. 22-1839, 2023 WL 2487339 (6th Cir. Mar. 14, 2023) ("[a]n Eighth Amendment claim will not lie if a plaintiff fails to allege that another inmate threatened him and that he communicated those threats to prison officials.").

Moreover, Plaintiff does not identify himself as vulnerable inmate, or susceptible to attack. *Davis v. Chorak*, 624 F. Supp. 3d at 881. ("Davis does not allege that he was part of a particular class of inmates or displayed a characteristic that rendered him vulnerable to attack by predatory inmates in the jail setting.") (citing *Bishop v. Hackel*, 636 F.3d 757, 767–68 (6th Cir. 2011)); *see also Jones v. Kenton Cnty., Ky.*, No. CV 2:23-164-DCR, 2025 WL 1584677, at \*6 (E.D. Ky. June 4, 2025) (granting summary judgment where the "circumstances do not resemble those in which the Sixth Circuit had determined that inmates faced an objectively substantial risk of harm," such as an inmate being labeled a "snitch," a vulnerable inmate's placement with a violent inmate, or where an inmate was repeatedly threatened by known gang members) (citations omitted).

Finally, the evidence indicates that Bowles's attack on Plaintiff was unprovoked and unprompted. These circumstances cannot create an objectively substantial risk that Bowles would attack him. *See Conner v. McLeod*, No. 4:22-CV-11965, 2025 WL 2312246, at *6 (E.D. Mich. Mar. 18, 2025), *report and recommendation adopted*, No. 22-11965, 2025 WL 1144657 (E.D. Mich. Apr. 16, 2025) ("Conner appears to concede that the attack was random and unexpected. Therefore, she cannot establish that there was a substantial risk that Sparks-Ross would assault her as required to satisfy the objective element."); *Moore v. Guastella*, No. 2:23-CV-10974, 2024 WL 5506982, at *6 (E.D. Mich. Sept. 19, 2024), *report and recommendation adopted*, No. 23-10974, 2025 WL 854902 (E.D. Mich. Mar. 19, 2025) ("[E]ven prisoners convicted of violent crimes can generally be expected not to attack their fellow inmates at random.").

There being no issue of fact as to whether Plaintiff was incarcerated under conditions objectively presenting a substantial risk of serious harm, Defendants are entitled to summary judgment on the failure-to-protect claim against them. Because Defendants have demonstrated entitlement to summary judgment on this basis, the Court need not address their arguments concerning the subjective component of the deliberate indifference standard.

### C.

This Court ordered Plaintiff to respond to Defendants' motion for summary judgment. (DN 49). In lieu thereof, Plaintiff filed what is captioned as a "Motion for Summary Judgment in favor of the Plaintiff," in which he requests the Court to "dismiss Defendants' . . . motion to dismiss and rule in my favor or move to trial." (DN 57, PageID.859).

Plaintiff's motion may only be granted if, when viewing the facts in a light most favorable to Defendants, there is no genuine dispute of fact, and he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 324. However, as discussed above, Plaintiff's claims

fail even when viewed in a light most favorable to him. Accordingly, because the undisputed record reveals that he has not exhausted his administrative remedies as to his claims for Eighth Amendment deliberate indifference to serious medical needs and First Amendment retaliation, and his Eighth Amendment failure-to-protect claim lacks merit even under the more generous standard of review, Plaintiff's cross-motion for summary judgment must be denied as to all claims.

### IV. CONCLUSION

For the reasons set forth herein, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that Defendants' motion for summary judgment (DN 43) is **GRANTED** and Plaintiff's motion for summary judgment (DN 57) is **DENIED**. The Court will enter a separate Judgment dismissing the action.

Date: September 12, 2025

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
Counsel of record
4414.015